

**U.S. Department of Justice**

United States Attorney
District of Maryland

| | | |
|---|---|---|
| Stephen M. Schenning<br>Acting United States Attorney<br><br>Kenneth S. Clark<br>Assistant United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4859<br>MAIN: 410-209-4800<br>FAX: 410-962-0717<br>TTY/TDD: 410-962-4462<br>Kenneth.Clark@usdoj.gov |

January 25, 2018

**VIA EMAIL AND US MAIL**

Harry J. Trainor, Esq.
Trainor, Billman, Bennett & Milko, LLP
116 Cathedral Street, Suite E
Annapolis, Maryland 21401

Richard C. Bittner, Esq.
7 Central Avenue, Suite 201
Glen Burnie, Maryland 21061

  Re: United States v. Elvin Diaz-Hernandez,
     Crim. No. JKB-16-0259

Dear Counsel:

  This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, Elvin Diaz-Hernandez (the "Defendant"), by the United States Attorney's Office for the District of Maryland and the Organized Crime and Gang Section of the Criminal Division (hereinafter "this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **January 31, 2018**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

  1. The Defendant agrees to waive indictment and plead guilty to an Information charging him with a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

  2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that in the District of Maryland and elsewhere, from at least 2015 to the date of the Information:

a. An enterprise, *La Mara Salvatrucha* ("MS-13"), existed, consisting of a group of persons associated together for a common purpose of engaging in a course of conduct through a pattern of racketeering activity;

b. That the defendant knowingly and willfully agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise MS-13;

c. That the enterprise was engaged in, or its activities would affect, interstate or foreign commerce; and

d. The Defendant knowingly and willfully conspired with one or more persons to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity that would constitute violations of 18 U.S.C. § 1962(c), including acts for which the maximum penalty includes life imprisonment.

## Penalties

3. Pursuant to 18 U.S.C. § 1963, the maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is life imprisonment, five years of supervised release, and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant also will be giving up certain valuable civil rights and will be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

3

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Pursuant to U.S.S.G. § 2E1.1(b), the base offense level the greater of offense level 19 or the offense level applicable to the underlying racketeering activity.

   b. The parties agree and stipulate that pursuant to U.S.S.G. § 1B1.3, the underlying racketeering activities in this case involve acts, committed, aided, abetted, counseled, commanded, induced, or willfully caused by the Defendant, as well as all those acts reasonably foreseeable to him in furtherance of the jointly undertaken criminal enterprise, and include, among others: first-degree murder, in violation of Maryland Code Ann. Crim. Law §§ 2-201 and 2-204, and assault with intent to commit murder, in violation of Maryland Code Ann. Crim. Law § 3-202.

   c. Pursuant to U.S.S.G. § 2A1.1(a) the base offense for first-degree murder is **43**. Pursuant to U.S.S.G. § 2A1.5(c)(2) and 2A2.1, the base offense level assault with intent to commit murder is thirty-three (33). Further, that level is increased by four (4) levels pursuant to U.S.S.G. § 2A2.1(b)(1)(A), because the victim sustained serious bodily injury. The final offense level for the assault with intent to commit murder is **37**.

   d. Grouping: The two offenses constitute separate groups under U.S.S.G. § 3D1.2. Pursuant to U.S.S.G. § 3D1.4, these crimes constitute 1 ½ units resulting in a combined offense level of **44** for the offenses.

   e. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The final offense level is **41**.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant wishes to argue for any other factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and government counsel at least fourteen days in advance of sentencing of the facts or issues he intends to raise.

## Obligations of the Parties

9. At the time of sentencing, this Office will recommend a reasonable sentence consistent with this agreement and the factors in 18 U.S.C. § 3553(a). This Office has already indicated that it will not seek the death penalty in relation to this case. This Office will also dismiss any open counts pending against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12.  The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13.  The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14.  This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete

plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Kenneth S. Clark
Clinton Fuchs
Assistant United States Attorneys

Catherine K. Dick
Trial Attorney
Organized Crime and Gang Section

I have had this agreement interpreted for me, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys and an interpreter. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

1-30-18
Date

_____
Elvin Diaz-Hernandez

We are Elvin Diaz-Hernandez's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement with him through an interpreter. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

1/30/18
Date

_____
Harry J. Trainor, Esq.

1/30/18
Date

_____
Richard C. Bittner, Esq.

7

## ATTACHMENT A
### Statement of Facts

*The United States and the Defendant stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

*La Mara Salvatrucha*, a/k/a the MS-13 gang ("MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including Montgomery County and Prince George's County, and throughout the United States. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland. MS-13 is a national and international criminal organization and is one of the largest street gangs in the United States. Gang members actively recruit members, including juveniles, from communities with a large number of Salvadorian immigrants.

At all relevant times, members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometime avoid conspicuous MS-13 tattoos with discreet ones such as "503," spider webs, three dots in a triangle formation signifying "vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

The gang colors of MS-13 were blue, black and white, and members often wore clothing, particularly sports jerseys, with the number "13" or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as Nike "Cortez." As with tattoos, some MS-13 members have selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement. MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

At all relevant times, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

At all relevant times, members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, kidnaping, robbery, extortion, obstruction of justice and threatening, intimidating and retaliating against witnesses, as well as attempts and

8

conspiracies to commit such offenses. MS-13 members were required to commit acts of violence both to maintain membership and discipline within the gang and against rival gangs. Participation in criminal activity by a member, particularly violent acts directed at rival gangs or as directed by the gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals are often referred to as "chavalas." MS-13, in the area of Prince George's County and Montgomery County, maintain rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and the Lewisdale Crew, among others.

At all relevant times, prospective members who sought to join MS-13 were required to complete an initiation process. Individuals who associated with and were friends of the gang were called "paisas." Individuals who did favors and other acts for the gang were called "paros." Persons being observed by the gang for potential membership were known as "observations." Individuals who had advanced to the final level before being "jumped in" were called "chequeos," or "cheqs."[2] Chequeos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become a full member or "homeboy," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

MS-13 is an international criminal organization, and is organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often work together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area, these cliques included Fulton Locos Salvatruchas ("FLS"), Molinos Locos Salvatruchas ("MLS"), Sailors Locotes Salvatrucha Westside ("SLSW"), Parkview Locotes Salvatrucha ("PVLS"), Normandie Locotes Salvatruchas ("NLS"), Weedons Locotes Salvatrucha ("WLS"), Peajes Locotes Salvatrucha ("PLS") and Langley Park Salvatruchas ("LPS").

MS-13, including its leadership, members and associates, constitute an "enterprise" as defined in Sections 1961(4) and 1959(b)(2) of Title 18, United States Code, that is, a group of individuals associated in fact that engage in, and the activities of which affect, interstate and foreign commerce. The enterprise constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the enterprise. The purposes of the enterprise include the following:

1.  Preserving and protecting the power, territory and profits of the enterprise through the use of intimidation, violence, including assaults and murder, and threats of violence;

---

[2] The terms "MS-13 associate" or "associate of MS-13" are used broadly in this Statement of Facts and include persons known as paisas, paros, observations, and chequeos. In addition, the names of the titles for levels or ranks of involvement are constantly changing within MS-13.

2. Promoting and enhancing the enterprise and its members' and associates' activities;

3. Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates, through violence and threats of violence;

4. Providing financial support and information to gang members, including those who were incarcerated for committing acts of violence or other offenses; and

5. Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct and prevent law enforcement officers from identifying the offender, apprehending the offender and trying and punishing the offender.

Within ten years prior to January 2015, in the District of Maryland, MS-13, through its members and associates, engaged in a pattern of racketeering activity as defined in Sections 1961(1) of Title 18, United States Code, including multiple acts involving murder, extortion and distribution of controlled substances in violation of federal laws and the laws of the state of Maryland.

From an unknown time but before in or about March 2015, the Defendant, **ELVIN DIAZ-HERNANDEZ**, was a member and associate of the Fulton clique of MS-13. The Defendant agreed with members of MS-13 to conduct and participate in the gang's affairs through a pattern of racketeering activity that included conspiracy to commit murder and offenses involving drug distribution. The Defendant agrees that the "Overt Acts" in the Information represent an accurate sample of his activities in furtherance of the racketeering enterprise.

On or about April 7, 2015, **DIAZ-HERNANDEZ**, along with other MS-13 members and associates, for the purpose of maintaining and increasing position in the MS-13, murdered Victim 2, who **DIAZ-HERNANDEZ** and others believed to be a rival gang member. Other gang members identified Victim 2 at a restaurant in Frederick, Maryland. They then called **DIAZ-HERNANDEZ** to inform him that they had a potential victim. They then lured Victim 2 to a wooded area in Frederick, Maryland. Co-Conspirator 1 brought weapons to that area and **DIAZ-HERNANDEZ** met them there. Co-Conspirator 2 hit Victim 2 in the head with a rock while Co-Conspirator 1 pointed an air gun (that looked like a real gun) at Victim 2 to hold him in place. **DIAZ-HERNANDEZ** then struck Victim 2 with a machete. **DIAZ-HERNANDEZ** and Co-Conspirator 2 both ultimately hit Victim 2 with a machete and knife until he was dead. The day after the murder, Co-Conspirator 1 and Co-Conspirator 2 buried Victim 2 in the woods near the site of the murder, where his body was ultimately recovered.

In or around August 2015, **DIAZ-HERNANDEZ**, along with other MS-13 members and associates, for the purpose of maintaining and increasing position in MS-13, planned and conspired to murder Victim 1, who **DIAZ-HERNANDEZ** and his co-conspirators believed to be a rival gang member. **DIAZ-HERNANDEZ** and other MS-13 members and associates had identified Victim 1 as a potential rival gang member and obtained approval to kill him. In Summer 2015, gang members identified the apartment in Frederick, Maryland where Victim 1 was living with his girlfriend, Victim 3. On August 28, 2015, **DIAZ-HERNANDEZ**, along with other gang members, went to the apartment and waited inside for Victim 1 to return. When they did, **DIAZ-**

**HERNANDEZ** and two other gang members attacked Victim 1 and Victim 3 with a machete and knives. Although both survived, the attack on Victim 1 left him with both hands nearly severed, and severe wounds to his face and torso. He has no use of one hand and limited use of the other.

\* \* \*

I have had this statement of facts translated and read to me, and have carefully reviewed it with my attorneys. I understand it, and I voluntarily agree to it. I acknowledge that it is true and correct and do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

1-30-18
Date

Elvin Diaz-Hernandez

We are Elvin Diaz-Hernandez's attorneys. We have carefully reviewed every part of this Statement of Facts with him through an interpreter. To our knowledge, his decision to sign it is an informed and voluntary one.

1/30/18
Date

Harry J. Trainor, Esq.

1/30/18
Date

Richard C. Bittner, Esq.

11